IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

| | |
|---|---|
| **FONDEL CHEMICALS LIMITED,**<br>1020 Ontario Street, Unit 6<br>Stratford, ON, Canada N5A 6Z3<br><br>**Plaintiff,**<br><br>-v-<br><br>**CREMER ERZKONTOR N.A., INC. f/k/a POSSEHL ERZKONTOR N.A., INC.,**<br>3117 Southside Avenue<br>Cincinnati, OH 45204<br><br>Also serve:<br>c/o FBT Ohio, Inc.<br>3300 Great American Tower<br>301 East Fourth Street<br>Cincinnati, OH 45202<br><br>**Defendant.** | CASE NO. 1:23-cv-319<br><br>**(Judge _____)**<br><br><br><br>**COMPLAINT WITH JURY DEMAND** |

Plaintiff Fondel Chemicals Limited ("Plaintiff" or "Fondel"), for its Complaint against Defendant Cremer Erzkontor N.A., Inc. f/k/a Possehl Erzkontor N.A., Inc. ("Defendant" or "Possehl"), states as follows:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff Fondel Chemicals Limited is a Canadian corporation with its principal place of business located in Stratford, Ontario, Canada. Fondel engages in the business of distributing chemicals and ingredients to a variety of industries, including the animal feed and fertilizer ingredient markets.

2. Cremer Erzkontor N.A., Inc. f/k/a Possehl Erzkontor NA, Inc. is an Ohio corporation with its principal place of business located in Cincinnati, Ohio. Possehl provides supply chain and logistics services for raw materials.

3. The Court has diversity of citizenship jurisdiction over this case pursuant to 28 U.S.C. § 1332(a) because Plaintiff is a citizen of a foreign state and Defendant is a citizen of Ohio and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

4. Venue is proper in the instant forum pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this judicial district and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

## FACTUAL BACKGROUND

5. Around October and November 2021, Fondel purchased approximately 2400 metric tons of amino acids from three separate suppliers in China.

6. The amino acids included Lysine, Threonine, Ammonium Chloride, and minerals.

7. Fondel intended to have the amino acids ("the goods") shipped into the United States and then distributed to its primarily U.S. customers.

8. Fondel invested approximately $4 million in these transactions.

9. One of Fondel's Chinese suppliers suggested that Fondel ship the goods as "break bulk" cargo from China to the United States.

10. "Break bulk" cargo refers to goods that are stowed on a ship in individually counted units, such as individual bags, boxes, or cartons.

11. That same Chinese supplier connected Fondel with Possehl to discuss transportation of the goods.

12. Possehl had experience shipping numerous other bulk commodities from China to North America.

13. In consideration for cash payment following shipment, Possehl verbally agreed to transport Fondel's goods.

14. The loading fees in China were to be paid by the suppliers, and then the goods were to be shipped as "break bulk" cargo by ocean freight from China to New Orleans, Louisiana.

15. Possehl agreed to then transfer the goods to river barges and ship them to Cincinnati, Ohio.

16. Possehl agreed to then offload the goods and store them in leased warehouse space located at Cincinnati Barge & Rail Terminal.

17. Possehl agreed to palletize the small bags of goods from the big bulk bags.

18. Fondel and Possehl agreed to storage and palletization rates for the goods at the warehouse.

19. Fondel memorialized the terms of its agreements with Possehl through written purchase orders that it delivered to Possehl. The purchase orders are attached hereto as **Exhibit A**.

20. The bottom of each purchase order says, "For Fondel Chemicals Limited, subject to our General Terms & Conditions-available on request." Fondel's General Terms & Conditions are attached hereto as **Exhibit B**.

21. Fondel paid its Chinese suppliers for the goods primarily between November 2021 and January 2022.

22. Possehl planned to ship the goods by way of three separate vessels.

23. Possehl agreed that it would take approximately two to three months for the goods to arrive into Cincinnati after loading them onto each vessel in China.

24. Based on this estimate, Fondel expected the goods to arrive into Cincinnati between late February 2022 and early March 2022.

25. However, multiple delays occurred during each step of the transit process.

26. The first vessel did not arrive into Cincinnati until May 2022, the second vessel did not arrive until June 2022, and the third vessel did not arrive until July 2022.

27. These delays in shipment were only the beginning of what became a disaster for Fondel.

28. Possehl failed to properly mark and identify the goods upon offloading them into the warehouse.

29. Possehl could not locate certain goods and thus could not prepare them to be distributed to Fondel's customers.

30. The goods became soiled with soot in the warehouse.

31. The bags containing the goods looked sloppy, dirty, and contaminated.

32. Certain of Fondel's customers rejected the soiled goods and forced Fondel to take back the goods and re-pack them at Fondel's own cost.

33. At some later point, Possehl transferred the goods to alternate warehouses in Huntington, West Virginia and other places without Fondel's knowledge or consent.

34. Possehl moved the palletization process to a warehouse in Proctorville, Ohio, without the prior knowledge or consent of Fondel.

35. Possehl botched the palletization process.

36. Fondel's customers rejected the goods for being unstable, in addition to appearing sloppy and dirty.

37. Fondel was forced to remedy the botched palletization process at a different facility where it had to hire a different company and pay higher rates than its contracted rates with Possehl.

38. During this time, Fondel was trying to release truckloads of the goods to its customers.

39. Fondel's trucks would show up at whichever warehouse the goods were supposedly located.

40. On multiple occasions, Fondel's trucks were turned away because the people at the warehouse would say they were unaware of any releases.

41. As a result, Fondel had to pay numerous charges for "Truck Ordered Not Utilized."

42. On other occasions, Fondel's trucks were accidentally loaded with other people's materials, which Fondel then had to return at its own cost.

43. In addition to the foregoing, approximately 33 bags of Lysine (approximately 220 pounds each) that were paid for by Fondel and that were being stored in one of Possehl's alternate warehouses sustained damage due to heavy rains and a flood of the warehouse, which rendered the product unusable. Possehl agreed to reimburse Fondel for these damaged goods, but has failed and refused to do so despite repeated demands.

44. Another seven bags of Lysine that were paid for by Fondel and that were being stored in Possehl's Cincinnati warehouse inexplicably became "lost". Despite repeated demands, Possehl has failed and refused to reimburse Fondel for this lost product.

45. Possehl's conduct has proximately and directly caused Fondel to suffer and continue to suffer damages, including, but not limited to, excess charges resulting from Possehl's delays, costs associated with re-packing the soiled goods, costs associated with remedying the botched palletization process, costs for delivery trucks that were ordered but not utilized, additional shipping costs, loss of revenues and profits due to customers' delayed or cancelled orders, additional storage costs, costs for damaged and lost product, and other additional warehouse charges. These charges and costs exceed $75,000.00.

46. Furthermore, Possehl's conduct has caused Fondel to renegotiate or lose several

customer contracts, resulting in hundreds of thousands of dollars in lost profits for Fondel.

47. Despite written notice and demand, Possehl has refused and continues to refuse to pay Fondel for its damages.

## COUNT I - BREACH OF CONTRACT

48. Fondel restates and incorporates by reference the prior paragraphs of this Complaint, as if fully rewritten herein.

49. Possehl contracted to provide transportation and logistics services to Fondel, including the shipment of the goods by ocean freight from China to New Orleans, the transfer of the goods to river barges, the shipment of the goods by river barge from New Orleans to Cincinnati, the offloading of the goods into warehouse space, and the storage and palletization of the goods.

50. Possehl undertook these contractual obligations for the express and intended benefit of Fondel.

51. Fondel memorialized the terms of its agreements with Possehl through written purchase orders that it delivered to Possehl. (*See* Ex. A.)

52. Possehl breached its contractual obligations to Fondel by failing to ship the goods in a timely manner, failing to properly mark and identify the goods, failing to ensure that the goods were maintained in saleable condition, failing to properly palletize the goods, and failing to locate the goods upon request.

53. Each of the aforementioned breaches constitute a material breach of Possehl's contractual obligations.

54. Possehl has no legal excuse for any of these breaches of contract.

55. Fondel has performed all of its contractual obligations to Possehl.

56. Possehl's breaches of contract have proximately and directly caused Fondel to

suffer and continue to suffer damages, the precise amount to be proven at trial.

## COUNT II - BREACH OF BAILMENT

57. Fondel restates and incorporates by reference the prior paragraphs of this Complaint, as if fully rewritten herein.

58. Possehl undertook and contracted to act as bailee of the goods described above and accepted the goods in good order and condition.

59. Possehl obtained possession of the bailed goods in China.

60. Possehl owed to Fondel, as bailor, a non-delegable duty to act in a commercially reasonable manner and to deliver the goods to Fondel in the same good order and condition as they were delivered to Possehl.

61. Possehl breached its bailment obligations by failing to ship the goods in a timely manner, failing to properly mark and identify the goods, failing to ensure that the goods were maintained in saleable condition, failing to properly palletize the goods, and failing to locate the goods upon request.

62. These failures constitute material breaches of bailment.

63. Possehl has no explanation for its failure to deliver the bailed goods in an undamaged condition to Fondel.

64. Possehl's breaches of bailment have proximately and directly caused Fondel to suffer and continue to suffer damages, the precise amount to be proven at trial.

## COUNT III - NEGLIGENCE

65. Fondel restates and incorporates by reference the prior paragraphs of this Complaint, as if fully rewritten herein.

66. Possehl undertook to provide transportation and logistics services to Fondel,

including the shipment of the goods by ocean freight from China to New Orleans, the transfer of the goods to river barges, the shipment of the goods by river barge from New Orleans to Cincinnati, the offloading of the goods into warehouse space, and the storage and palletization of the goods.

67. Possehl undertook these obligations for the express and intended benefit of Fondel, and as such owed a duty of care to Fondel.

68. Possehl breached its duty of care by failing to ship the goods in a timely manner, failing to properly mark and identify the goods, failing to ensure that the goods were maintained in saleable condition, failing to properly palletize the goods, and failing to locate the goods upon request.

69. Each of the aforementioned breaches constitute a material breach of Possehl's duty of care.

70. Possehl's breaches have proximately and directly caused Fondel to suffer and continue to suffer damages, the precise amount to be proven at trial.

**WHEREFORE**, Plaintiff Fondel respectfully requests that judgment be entered in its favor as follows:

A. On Count One, judgment in favor of Fondel and against Possehl for breach of contract in an amount to be proven at trial plus interest, costs, and reasonable attorneys' fees;

B. On Count Two, judgment in favor of Fondel and against Possehl for breach of bailment in an amount to be proven at trial plus interest, costs, and reasonable attorneys' fees;

C. On Count Three, judgment in favor of Fondel and against Possehl for negligence in an amount to be proven at trial plus interest, costs, and reasonable attorneys' fees;

D. Such further relief as this Court deems just and proper.

Dated:  May 25, 2023

Respectfully submitted,

/s/ Steven C. Coffaro
Steven C. Coffaro (0065116)
John E. Dahm (0100364)
KEATING MUETHING & KLEKAMP PLL
One East Fourth St., Suite 1400
Cincinnati, OH 45202
Tel:  (513) 579-6400
Fax:  (513) 579-6457
steve.coffaro@kmklaw.com
jdahm@kmklaw.com

*Attorneys for Plaintiff, Fondel Chemicals Limited*

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable herein.

12617258